764 S.E.2d 740

**Estella ROBINSON, Defendant Below, Petitioner**

v.

**CITY OF BLUEFIELD, Plaintiff Below, Respondent.**

No. 13–0936.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 2014.

Decided Oct. 2, 2014.

Dissenting Opinion of Justice Workman Oct. 31, 2014.

Concurring Opinion of Justice Benjamin Nov. 14, 2014.

Gerald R. Linkous, Esq., Mercer County Public Defender Corp., Princeton, West Virginia, for the Petitioner.

Brian K. Cochran, Esq., Brewster, Morhous, Cameron, Caruth, Moore, Kersey, & Stafford PLLC, Bluefield, West Virginia, for the Respondent.

Justice KETCHUM:

Estella Robinson ("Ms. Robinson") appeals from an order entered by the Circuit Court of Mercer County affirming a municipal court's order to kill her dog. The circuit court concluded that the municipal court had the authority and jurisdiction to order the destruction of her dog.

On appeal to this Court, Ms. Robinson argues that the circuit court erred when it concluded that the municipal court had the authority to order the destruction of her dog. After review, we agree with Ms. Robinson. We therefore reverse the circuit court's order affirming the municipal court's order to kill Ms. Robinson's dog.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2013, Bluefield Animal Control Officer Randall Thompson responded to a complaint about two dogs at Ms. Robinson's residence. The complaint stated that one dog was running at large and that a second dog had inadequate shelter. While investigating the complaint at Ms. Robinson's residence, Officer Thompson was attacked by one of Ms. Robinson's dogs, Major. Major was "tied-up" when Officer Thompson arrived at the residence. While Officer Thompson was talking to Ms. Robinson, Major broke free from the chain and bit Officer Thompson on both of his hands. Officer Thompson sought medical treatment following this incident.

The City of Bluefield subsequently brought charges against Ms. Robinson in its municipal court, charging her with having a dangerous animal in violation of Bluefield City Ordinance § 4–49. Ordinance § 4–49 states:

No person shall own, keep or harbor any dangerous animal known by him to be vicious, dangerous or in the habit of biting or attacking persons, whether or not such dog wears a tag or muzzle, and upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, municipal judge may order any police officer or the animal control officer to cause such animal to be killed. Vicious or dangerous animals are declared to be a public nuisance and a menace to the public safety.

In April 2013, Ms. Robinson pled guilty to violating Bluefield City Ordinance § 4–49. After the plea was entered, the municipal court ordered the dog to be killed. However, the municipal court stayed the order for thirty days to allow Ms. Robinson to (1) seek an expert opinion on whether the dog could be rehabilitated, and (2) to find a home for the dog outside of Bluefield. Ms. Robinson appeared before the municipal court on May 15, 2013, and informed the court that she found a home for the dog outside of Bluefield. However, she stated that she did not have an expert opinion that the dog could be rehabilitated.[1] Following this hearing, the municipal court again ordered that the dog be killed.

Ms. Robinson appealed the municipal court's order to the circuit court. The circuit

---

1. Ms. Robinson asserts that she and her counsel believed that the municipal court stated Major would not be destroyed if she *either* found a home for him outside of Bluefield or if an expert determined that Major could be rehabilitated to prevent further vicious behavior. The appendix-record does not contain a transcript or a recording from the municipal court hearings. Ms. Robinson eventually obtained a report from an expert who stated that Major could be rehabilitated.

court conducted a hearing on July 24, 2013, on the sole issue of whether the municipal court had the authority and jurisdiction to order the destruction of a dog pursuant to Ordinance § 4–49. The circuit court concluded that under W.Va.Code § 8–12–5(26) [2008], the municipal court had the authority to order the destruction of Ms. Robinson's dog. The circuit court entered an order on July 31, 2013, affirming the municipal court's order. After entry of this order, Ms. Robinson filed the present appeal.

## II.

## STANDARD OF REVIEW

The sole issue presented in this appeal is whether the circuit court erred when it determined that the municipal court had the authority to order the destruction of Ms. Robinson's dog. Our review of the circuit court's ruling is de novo. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syllabus Point 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995). Accord Syllabus Point 1, Appalachian Power Co. v. State Tax Dep't of West Virginia, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review.").

With the foregoing in mind, we consider the parties' arguments.

## III.

## ANALYSIS

Before analyzing the parties' arguments, we emphasize that the sole issue before this Court on appeal is the legal question of whether a municipality may enact an ordinance vesting its municipal court with the authority to order the destruction of a dog found to be vicious, dangerous, or in the habit of biting or attacking persons. Whether Ms. Robinson's dog was "vicious, danger-

ous or in the habit of biting or attacking persons" is not before this Court.[2]

■ Turning to the legal issues before us, we note that "[m]unicipalities are but political subdivisions of the state, created by the Legislature for purposes of governmental convenience, deriving not only some, but all, of their powers from the Legislature." Booten v. Pinson, 77 W.Va. 412, 421, 89 S.E. 985, 989 (1915). This Court addressed the source and scope of municipal power and authority in Syllabus Point 1 of Brackman's Inc. v. City of Huntington, 126 W.Va. 21, 27 S.E.2d 71 (1943), stating:

A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

The Court reaffirmed this holding in Miller v. City of Morgantown, 158 W.Va. 104, 109, 208 S.E.2d 780, 783 (1974), stating, "A municipal corporation possesses only the power and authority given to it by the legislature." See also, Syllabus Point 2, Hyre v. Brown, 102 W.Va. 505, 135 S.E. 656 (1926) ("A municipal corporation possesses and can exercise only the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the accomplishment of the declared objects and purposes of the corporation-not simply convenient, but indispensable." (Citation omitted.)).

■ This Court has held that when a municipal ordinance conflicts with a statute, the ordinance is void. Hence, "[w]hen a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syllabus Point 1, Vector Co. v. Bd. of Zoning Appeals of Martinsburg, 155 W.Va. 362, 184 S.E.2d 301 (1971). Accord Syllabus Point 1, State ex rel. Wells v. City of Charleston, 92

---

**2.** During oral argument, counsel for the City of Bluefield discussed Officer Thompson's injuries. While we are mindful of these injuries and do not seek to minimize them, the only issue before this Court is the narrow, legal question concerning the scope of a municipal court's authority.

W.Va. 611, 115 S.E. 576 (1922) ("When a municipal ordinance is opposed to the policy of the state in relation to the subject-matter thereof and in conflict with the statute of the state in relation thereto, the ordinance is void to the extent of its conflict with the statute and should not be enforced.").

■ In the present case, the municipal court was acting pursuant to the authority granted to it by Ordinance § 4–49.[3] The City of Bluefield asserts that Ordinance § 4–49 was enacted under the authority granted to municipalities in W.Va.Code § 8–12–5(26). This code section, entitled "*General powers of every municipality and the governing body thereof*" (emphasis added), states:

> In addition to the powers and authority granted by: (i) The Constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon: ...
>
> (26) To regulate or prohibit the keeping of animals or fowls and to provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large[.]

While W.Va.Code § 8–12–5(26) sets forth the *general* powers a municipality has to provide for the destruction of *animals or fowls kept contrary to law or found running at large*, the Legislature has enacted an entire, specific statutory scheme addressing the regulation of *dogs* in W.Va.Code § 19–20–1 *et seq.* W.Va.Code § 19–20–20 addresses the process to be followed when a dog is alleged to be "vicious, dangerous or in the habit of biting or attacking persons or other dogs or animals." It specifically vests jurisdiction in circuit and magistrate courts. W.Va.Code § 19–20–20 states:

> Except as provided in section twenty-one of this article, no person shall own,

keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. *Upon satisfactory proof before a circuit court or magistrate* that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

(Emphasis added.)

Ms. Robinson argues that under W.Va. Code § 19–20–20, the City of Bluefield was required to present satisfactory proof that her dog was "vicious, dangerous, or in the habit of biting or attacking other persons" before a circuit court or a magistrate. Because the City of Bluefield did not offer such proof before a circuit court or a magistrate, Ms. Robinson asserts that the circuit court erred by affirming the municipal court's order.

By contrast, the City of Bluefield argues that W.Va.Code § 19–20–20 should be read in conjunction with W.Va.Code § 8–12–5(26). The City of Bluefield asserts that both of these statutes permit an order killing a dog upon satisfactory proof that a dog is "vicious, dangerous, or in the habit of biting or attacking other persons." According to the City of Bluefield, municipal courts possess this authority under W.Va.Code § 8–12–5(26), while circuit courts and magistrate courts possess this authority pursuant to W.Va.Code § 19–20–20.

■ Our resolution of this issue begins with a review of our rules of statutory construction. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. at 587, 466 S.E.2d at 438; *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to

---

**3.** The *West Virginia Constitution* states that municipalities, cities and towns "shall have jurisdiction to enforce municipal ordinances." Art. VIII § 11.

be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

After review, we agree with Ms. Robinson and find that under the plain language of W.Va.Code § 19–20–20, the City of Bluefield was required to set forth satisfactory proof that Ms. Robinson's dog was "vicious, dangerous, or in the habit of biting or attacking other persons" before a circuit court or a magistrate, not a municipal court.

Before a dog that is alleged to be vicious, dangerous, or in the habit of biting or attacking other persons may be destroyed by a municipality, it must provide *"satisfactory proof before a circuit court or magistrate* that such dog is vicious, dangerous, or in the habit of biting or attacking other persons."* (Emphasis added.) The Legislature specifically vested the authority to determine whether a dog is "vicious, dangerous, or in the habit of biting or attacking other persons" with two elected judicial officers—circuit court judges and magistrates.[4] The Legislature did not vest municipal court judges—non-elected judicial officers—with the authority to order the destruction of a vicious or dangerous dog.

This Court has stated that "a statute which specifically provides that a thing is to be done in a particular manner normally implies that it shall not be done in any other manner." *Phillips v. Larry's Drive–In Pharmacy, Inc.*, 220 W.Va. 484, 492, 647 S.E.2d 920, 928 (2007). W.Va.Code § 19–20–20 confines the authority to order the destruction of a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons" to circuit courts and magistrates. Had the Legislature intended for courts other than circuit courts or magistrate courts, such as municipal courts, to possess the authority to order the destruction of a dog upon satisfactory proof that the dog was "vicious, dangerous, or in the habit of biting or attacking other persons," W.Va.Code § 19–20–20 could have authorized "any court or magistrate" to make this determination. In fact, the Legislature expressly permitted "any court or magistrate" to decide other matters relating to the control and management of dogs in W.Va.Code 19–20–1 *et seq. See* W.Va.Code § 19–20–14 [1986] and W.Va.Code § 19–20–17 [1986]. By contrast, the Legislature specifically restricted the authority to order the destruction of a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons" to circuit courts and magistrates.

While acknowledging that municipal courts do not possess the authority to order the destruction of a dog found to be vicious or dangerous under W.Va.Code § 19–20–20, the City of Bluefield argues that it had the authority to enact Ordinance § 4–49 based on the general authority granted to municipalities in W.Va.Code § 8–12–5(26). W.Va.Code § 8–12–5(26) addresses the general power a municipality has to provide for the destruction of "animals or fowls" kept contrary to law or found running at large. This statute does not specifically discuss dogs, nor does it discuss the process to be followed when a dog is alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." By contrast to the general power of a municipality to provide for the destruction of "animals or fowls" kept contrary to law or found running at large contained in W.Va.Code § 8–12–5(26), W.Va.Code § 19–20–20 sets forth the specific process to be followed when it is alleged that a dog is "vicious, dangerous, or in the habit

---

**4.** This Court described the process a circuit court or magistrate court should follow when presented with an allegedly vicious or dangerous dog pursuant to W.Va.Code § 19–20–20. In *Durham v. Jenkins*, 229 W.Va. 669, 674, 735 S.E.2d 266, 270 (2012), the Court stated:

> For a magistrate or circuit court to obtain authority to order a dog killed, the magistrate or judge must first find, upon conducting a criminal proceeding, that a crime described in the first sentence of § 19–20–20 has been committed. This Court holds that the authority to order a dog killed pursuant to W.Va.Code § 19–20–20 (1981), stems solely from a criminal proceeding, and a private cause of action may not be brought for the destruction of a dog under this section.

of biting or attacking other persons or other dogs or animals."

This Court has previously held, "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter[.]" Syllabus Point 1, in part, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord Tillis v. Wright*, 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg*, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (Citations omitted)); *Daily Gazette Co., Inc. v. Caryl*, 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]" (Citations omitted)).

W.Va.Code § 8–12–5(26) and W.Va.Code § 19–20–20 address the same general subject matter—the regulation and management of animals. W.Va.Code § 19–20–20 addresses the regulation of a specific animal that is alleged to have behaved in a specific manner—a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." Conversely, W.Va.Code § 8–12–5(26) addresses "animals or fowls" that are "kept contrary to law or found running at large." Unlike the specific direction provided in W.Va.Code § 19–20–20, W.Va.Code § 8–12–5(26). does not address (1) dogs that are alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or

animals," or (2) courts that are authorized to determine whether a dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." Under basic rules of statutory construction, it is clear that the Legislature intended for the specific statute (W.Va.Code § 19–20–20) to control over the general statute (W.Va. Code § 8–12–5(26)).

The present case presents the precise factual scenario contemplated by W.Va.Code § 19–20–20—Ms. Robinson's dog was allegedly "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." W.Va.Code § 8–12–5(26) provides no direction on the process to be followed when a dog is alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." We therefore conclude that under our rules of statutory construction, the specific direction addressing allegedly vicious dogs contained in W.Va.Code § 19–20–20 prevails over the general direction regarding "animals or fowls" that are "kept contrary to law or found running at large" contained in W.Va. Code § 8–12–5(26).

Based on the foregoing, we hold that before the destruction of a dog may be ordered under the authority of W.Va.Code § 19–20–20 [1981], satisfactory proof that the dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals" must be presented before a circuit court or a magistrate.[5] Applying this holding to the present case, we find that Bluefield Ordinance § 4–49 is void to the extent that it allows a municipal court to order the destruction of a dog.[6]

---

5. This holding is limited to the narrow circumstance in which a municipal judge, pursuant to a municipal ordinance, orders the destruction of a dog that is alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons." This holding does not have any effect on any other statute setting forth the general rules and regulations governing the control and management of dogs.

6. A municipality may enact an ordinance prohibiting a person from owning, keeping or harboring a dog known to be vicious, dangerous or in the habit of biting or attacking persons, and may pursue charges against an owner of such a dog

in municipal court. However, a municipality seeking an order to kill a vicious or dangerous dog must do so in circuit or magistrate court and follow the procedure this Court set forth in *Durham v. Jenkins*, 229 W.Va. 669, 674, 735 S.E.2d 266, 270 (2012) ("For a magistrate or circuit court to obtain authority to order a dog killed, the magistrate or judge must first find, upon conducting a criminal proceeding, that a crime described in the first sentence of § 19–20–20 has been committed. This Court holds that the authority to order a dog killed pursuant to W.Va. Code § 19–20–20 (1981), stems solely from a criminal proceeding, and a private cause of ac-

## IV.

## CONCLUSION

The circuit court's July 31, 2013, order affirming the municipal court's order to kill Ms. Robinson's dog is reversed. This matter is remanded to the municipal court for entry of an order vacating its order to kill Ms. Robinson's dog.

Reversed and Remanded.

Justice BENJAMIN concurs and reserves the right to file a concurring Opinion.

Justice LOUGHRY dissents and reserves the right to file a dissenting Opinion.

Justice WORKMAN dissents and reserves the right to file a dissenting Opinion.

BENJAMIN, Justice, concurring:

(Filed Nov. 14, 2014)

I fully understand my dissenting colleagues' reliance on emotion in reaching their conclusions in this case. Cases involving dogs generate a great deal of emotions. This is especially true when, as here, a dog has seriously injured someone. It is important, however, that we, as a Court, maintain our focus on the law of the case, not what we wish the law to be—but isn't. While it is tempting to want to expand our role into that of policy, rather than that of law, the policy determinations herein are those of the Legislature, not this Court. It is the Legislature which has set forth the law which determines this case and it is for the Legislature to change that law if a change is warranted.

The sole issue before the Court in this case was whether a municipal court has the authority to act as it did below pursuant to city ordinance. The Majority decision concluded—upon applying long-standing basic rules of statutory construction to the pertinent sections of the West Virginia Code—that our Legislature did not intend for municipalities to have that authority. The Majority's decision is correct. I write separately to under-

score the obligation of our judicial branch to enforce our Legislature's intent and the rule of law in West Virginia, and to resist founding our decision on emotion, strong as the desire may be to do so in this case.

Dogs are, in most jurisdictions, personal property. *See, e.g.,* W. Va.Code § 19–20–1 (1975) ("Any dog shall be and is hereby declared to be personal property within the meaning and construction of the laws of this State...."). However, because "[a]n increasing number of American households regard their companion animals as being as much a part of their family as they do their human family members," states have begun to treat companion animals differently from other types of animals and other types of personal property. Sabrina DeFabritiis, *Barking Up the Wrong Tree: Companion Animals, Emotional Damages and the Judiciary's Failure to Keep Pace,* 32 N. Ill. U.L.Rev. 237, 237–38 (2012) (hereinafter *Barking Up the Wrong Tree*). For instance, Connecticut, Illinois, and Tennessee have enacted statutes expressly permitting recovery of non-economic damages for the loss of a companion animal. *Id.* at 255 n. 97 ("Conn. Gen.Stat. § 22–351a (2009) (originally enacted in 2004); 510 Ill. Comp. Stat. 70/16.3 (2010) (originally enacted in 2002); Tenn. Code Ann. § 44–17–403 (West 2010) (originally enacted 2000)."). Companion animals have also been the subject of custody and estate planning or administration cases. *See* Susan J. Hankin, *Not a Living Room Sofa: Changing the Legal Status of Companion Animals,* 4 Rutgers J.L. & Pub. Pol'y 314, 351–65 (2007).

The West Virginia Legislature has enacted statutes that treat animals which may be companion-animals, such as dogs, in a different manner than other types of personal property. *See* W. Va.Code § 19–20–1 *et seq.;* W. Va.Code § 19–20A–1 *et seq.;* W. Va.Code § 19–20B–1 *et seq.;* W. Va.Code § 19–20C–1 *et seq.;* W. Va.Code § 19–20D–1 *et seq.* For instance, the Legislature has specifically delineated a punishment for destroying a dog,[1]

tion may not be brought for the destruction of a dog under this section.").

1. W. Va.Code § 19–20–12(a) (2007) ("Any dog which is registered, kept and controlled as pro-

vided in this article or any dog, ... kept and maintained as a companion animal by any person, irrespective of age, is protected by law; and, except as otherwise authorized by law, any person who shall intentionally, knowingly or reck-

and this punishment is separate and apart from the ·punishments provided for destroying other types of animals,[2] or other personal property.[3] Considering that the human-animal "bond often causes extensive emotional suffering by the human companion when the animal is injured or killed by a third-party's intentional or negligent act," DeFabritiis, *Barking Up the Wrong Tree*, 32 N. Ill. U.L.Rev. at 238, it is unsurprising that the Legislature would create a method by which the destruction of dogs is treated differently than the destruction of other personal property.

Part of the Legislature's method for dealing with the destruction of dogs is the requirement that *only* magistrates and circuit courts have the authority to order the destruction of a dangerous dog, upon receiving satisfactory proof that the dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals. There are a number of reasons why the Legislature would limit this authority to only magistrates and circuit courts to the exclusion of municipal courts. First, magistrates and circuit judges are all elected officials, and as such, the people who elect them hold them directly accountable for their decisions. Second, there are a variety of qualifications that must be met to hold office as a magistrate or circuit judge. Circuit judges must be licensed attorneys who have practiced law for at least five years prior to taking office. W. Va. Const. art. VIII, § 7. Magistrates

shall be. at least twenty-one years of age, shall have a high school education or its equivalent, shall not have been convicted of any felony or any misdemeanor involving moral turpitude and shall reside in the county of his election. No magistrate shall be a member of the immediate family of any other magistrate in the county.

W. Va.Code § 50–1–4 (1992). Third, magistrates have the ability to sentence someone criminally for up to one year, and circuit courts can impose much harsher sentences. W. Va. Const. art. VIII, § 10; W. Va.Code § 50–2–3 (1993); W. Va.Code § 51–2–2 (2008). Both magistrates and circuit judges must complete continuing judicial education courses throughout their terms of office. W. Va.Code § 50–1–4; W. Va. R. Disciplinary P. 7.14(A); W. Va. R. Disciplinary P. 7.16(A).

Unlike with magistrates or circuit judges, there is no legislative requirement that municipal judges be elected.[4] The charter of the City of Bluefield, for example, provides that municipal judges hold office at the pleasure of the municipality's board of directors. Additionally, although many municipal judges in West Virginia are licensed attorneys, there is no requirement that they be so. There are almost no minimum qualifications to serve as a municipal judge. As is the case with the City of Bluefield, the only minimum requirement for serving as a municipal judge is that he or she not have been "convicted of a felony or any misdemeanor crime set forth in" certain delineated portions of the Code dealing primarily with sex

---

lessly kill, injure, poison or in any other manner, cause the death or injury of any dog ... is guilty of a misdemeanor and, upon conviction thereof, shall be ordered to provide public service for not less than thirty nor more than ninety days or fined not less than three hundred dollars nor more than five hundred dollars, or both." (In part.)).

**2.** W. Va.Code § 61–3–27 (1994) ("If a person maliciously administers poison to, or exposes poison with the intent that it should be taken by, any horse, cow or other animal of another person, or if any person maliciously maims, kills, or causes the death of any horse, cow or other animal of another person, of the value of one hundred dollars or more, the person is guilty of a felony, and, upon conviction, shall be imprisoned in the penitentiary not less than one year nor more than ten years; and, if the horse, cow or

other animal is of less value than one hundred dollars, the person is guilty of a misdemeanor, and, upon conviction, shall be confined in jail not more than three months and fined not more than five hundred dollars: Provided, That this section shall nòt be construed to include dogs.").

**3.** W. Va.Code § 61–3–30(a) (2004) ("If any person unlawfully, but not feloniously, ... destroys ... any property, real or personal, of another, he or she is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars, or confined in the county or regional jail not more than one year, or both fined and imprisoned.").

**4.** The Legislature permits for the election or appointment of municipal judges, in accordance with a municipality's charter or ordinances. W. Va.Code § 8–10–2(a) (2007).

offenses. W. Va.Code § 8–10–2(b) (2007). However, the Legislature has provided that municipal judges who are not lawyers take a course in rudimentary principles of the law and procedure, and that municipal judges who are not lawyers attend continuing education annually. W. Va.Code § 8–10–2(c). Finally, compared to the powers of magistrates and circuit courts, municipal courts' powers are limited. For example, according to its charter, the Bluefield municipal court may only impose a fine up to $500 and may not order imprisonment for a term greater than 30 days.

Therefore, where the lives of companion animals such as dogs are at stake, lives for which the Legislature has imposed a minimum $300 fine and a 30–day sentence of public service for the wrongful taking thereof, it is reasonable to interpret that the Legislature intends to place those lives in the hands of the more legally accountable and authoritative magistrates and circuit judges of this state.

Chapter 19, Article 20 of the West Virginia Code represents the Legislature's acknowledgment of the unique role companion animals, such as dogs, hold with West Virginians. While the early twentieth century saw this Court uphold municipal ordinances permitting municipal judges to order the destruction of dogs, see *City of Buckhannon ex rel. Cockerill v. Reppert*, 118 W.Va. 10, 10, 189 S.E. 585, 585 (1937) (Kenna, J., concurring), the Legislature, in enacting statutes like W. Va.Code § 19–20–20 in the latter half of the century, reveals a definitive shift in the Legislature's attitude toward companion animals such as dogs. Thus, while one may certainly argue that most municipal court judges could be counted on to fully consider the matters herein, it is the Legislature's policy call and it is our obligation to enforce that policy.

As the Majority opinion makes clear, municipalities may still "enact ordinances prohibiting a person from owning, keeping or harboring a dog known to be vicious, dangerous or in the habit of biting or attacking persons, and may pursue charges against an owner of such a dog in municipal court." Furthermore, the Legislature has specifically provided the same in W. Va.Code § 19–20–20. Should a municipality wish to have a dangerous dog destroyed, it need only present its case to a local magistrate or circuit court.[5]

LOUGHRY, Justice, dissenting:

In complete disregard of the unfortunate truth that not all dogs are like the beloved Lassie, a vicious dog has been granted a pardon by the highest court of this State. Indeed, the majority of this Court has seemingly turned a blind eye to the fact that the dog in question[1] broke free of its chain and engaged in a brutal and unprovoked attack upon an experienced humane officer,[2] whose resultant injuries required surgery and a hospitalization that approximated five days.[3] The majority also seems to disregard the fact that the dog's owner pled guilty to owning and keeping an animal known by her to be vicious, dangerous, and in the habit of biting persons in violation of Bluefield City Ordi-

---

**5.** In an obvious effort to further ensure the protection of the public, the Legislature has also recently provided for a private cause of action by which persons injured by a dog may seek to have that dog euthanized. W. Va.Code § 19–20D–1 *et seq.* This article provides that the action must be brought before a *magistrate court*, it lists a number of elements necessary for maintaining the action, and it states that a petitioner must prove his or her case by clear and convincing evidence. W. Va.Code § 19–20D–2 (2014).

**1.** The dog is a pit bull terrier.

**2.** The humane officer was responding to the petitioner's residence in reference to a complaint that one dog was running loose, and another had inadequate shelter.

**3.** The necessity of surgical treatment and hospitalization was described by counsel during oral argument. I find the length of this hospitalization to be noteworthy particularly in light of the growing trend of "same-day" surgery centers, where patients are discharged the same day of their surgery, even when internal organs have been surgically excised. Consequently, it is clear to me that the dog in question inflicted very serious injuries upon the humane officer so as to require a hospitalization of that duration. That being said, the majority's statement that "[o]fficer Thompson sought medical treatment following this incident[ ]" callously diminishes the severity of this situation.

nance § 4–49. While I, too, love animals, and have fond memories of my childhood companion and faithful dog, "Bozo," my affinity does not blind me to the sad reality that some dogs are dangerous and vicious, and inflict serious injuries, and even death, on innocent victims.[4]

In order to address the threat posed by vicious dogs and protect the public health, safety, and general welfare of their citizens, numerous municipalities in West Virginia have enacted vicious dog ordinances, which are enforced in the municipal courts of those municipalities.[5] *See, e.g.,* Section 10–117 of the Code of Ordinances for the City of Charleston (providing for the euthanization of dangerous dogs under certain conditions); Section 507.11 of the City of Morgantown's Ordinances (providing for the destruction of vicious dogs under certain circumstances); Section 505.15 of the Codified Ordinances of the City of Martinsburg (providing for the lethal destruction of vicious dogs when certain conditions are met); Section 505.17 of the Code of Ordinances of the City of Parkersburg (providing that vicious dogs declared to be public nuisances may be summarily destroyed if found running at large and otherwise under certain circumstances); Section 508.11 of the Code of Ordinances for the City Wheeling (providing for destruction of vicious dogs after certain conditions are met); Section 507.99 of the City of Dunbar Code of Ordinances (providing that any vicious dog that attacks human being or another domestic animal may be ordered destroyed when in municipal court's judgment, such vicious dog represents continuing threat of serious harm to human beings or domestic animals); Section 507.18(i) of the Codified Ordinances of the City of Clarksburg (providing that City Manager or his/her designee may order destruction of dog it determines to be extremely dangerous to public health or

---

4. *See Durham v. Jenkins,* 229 W.Va. 669, 735 S.E.2d 266 (2012) (disallowing civil suit brought under criminal statute by parents seeking destruction of dog who attacked their young daughter causing extensive injuries to child's head, waist, thighs, and back and requiring hospitalization and surgical repair); *State v. Molisee,* 180 W.Va. 551, 378 S.E.2d 100 (1989) (reversing order to euthanize dog that injured child where dog's owner did not receive notice of trial date); *Atkins v. Conley,* 202 W.Va. 457, 504 S.E.2d 920 (1998) (reversing on evidentiary error jury verdict finding dog's owners liable to parents of two-year-old child, who incurred multiple injuries and permanent facial scarring inflicted by dog); *Bowden v. Monroe Cnty. Com'n,* 232 W.Va. 47, 750 S.E.2d 263 (2013) (setting aside dismissal of complaint brought by estate of victim who was maimed beyond recognition and ultimately died due to injuries sustained when he was attacked by several pit bulls while taking walk); *State v. Moore,* Nos. 11AP–1116, 11AP–1117, 2013 WL 3968166 (Ohio App. 10 Dist.2013)(Aug. 1, 2013) (affirming conviction on two counts of failure to confine vicious dog where appellant's pit bull mauled two different victims in separate incidents); *State v. Collins,* 409 S.C. 524, 763 S.E.2d 22 (2014) (Aug. 20, 2014) (holding trial court's admission of pre-autopsy photographs of victim, 10–year–old boy who died after being severely mauled by dogs, was not abuse of discretion); *King v. Foht,* 2013 WL 5310436 (Tenn. Ct.App.2013) (reversing summary judgment granted in favor of owners of residential rental property in personal injury action brought on behalf of eight-year-old child attacked and injured by pit bull dog while she was walking along sidewalk); *Sawh v. City of Lino Lakes,* 823 N.W.2d 627 (Minn.2012) (finding substantial evidence supported city's finding that dog was unprovoked when it bit victim in third incident, so as to support city's order for destruction of dog under city ordinance); *Tracey v. Solesky,* 427 Md. 627, 50 A.3d 1075 (2012) (finding that harboring pit bull terrier was inherently dangerous activity for which landlord could be held strictly liable when tenant's pit bull crossed street, attacked, and seriously injured 10–year–old boy who was playing); *Watson v. State,* 337 S.W.3d 347 (Tex. App.2011) (affirming conviction for offense of attack by dog resulting in death where seven-year-old boy was mauled to death by dogs).

5. Many municipal judges in this State, including the long-time municipal judge in the City of Bluefield, are lawyers. And, where they are not, they must attend a course in the principles of law and procedure. *See* W.Va.Code § 8–10–2(c) (providing that "[a]ny person who assumes the duties of municipal court judge who has not been admitted to practice law in this state shall attend and complete the next available course of instruction in rudimentary principles of law and procedure.... The instruction must be performed by or with the services of an attorney licensed to practice law in this State for at least three years."). Thereafter, municipal judges who are not lawyers must also attend a continuing education course annually. *Id.* In addition, municipal courts may hold jury trials, where warranted. *See* W.Va.Code § 8–10–2(d) (providing, in part, that "a defendant who has been charged with an offense for which a period of confinement in jail may be imposed is entitled to a trial by jury.").

safety, dog that has made extremely vicious attack upon individual, or dog declared dangerous whose owner is unable or unwilling to adequately restrain it). Importantly, many municipalities have had vicious dog ordinances for decades. As we explained nearly eighty years ago,

> under modern law ... the obvious necessity of protecting the public from ... vicious, and otherwise dangerous dogs [means that dogs] must be held subject to ... very rigid regulation. Because of this, ordinances and statutes authorizing the summary destruction of dogs not kept in accordance with their terms have generally been upheld.

*City of Buckhannon ex rel. Cockerill v. Reppert*, 118 W.Va. 10, 10, 189 S.E. 585, 585 (1937) (Kenna, J., concurring).

Citizens are not without recourse should they disagree with a ruling of a municipal court, as seen here, where the petitioner appealed the municipal court's order following her counseled guilty plea. The petitioner challenged the municipal court's authority to order the destruction of her vicious dog and argued that West Virginia Code § 19–20–20,[6]

which allows counties to seek the destruction of vicious dogs in magistrate and circuit courts, conflicts with the Bluefield City Ordinance § 4–49, which gives its municipal court similar authority.

In addressing the petitioner's arguments, the circuit court thoroughly explained that Chapter 8 of the West Virginia Code governs municipal corporations, whereas Chapter 19 does not.[7] The circuit court further explained that for a conflict to exist, as the petitioner argued, the Bluefield ordinance must either (1) permit or authorize that which the Constitution or general law forbids or prohibits, or (2) forbids or prohibits that which the Constitution or general law permits or authorizes.[8] The circuit court soundly reasoned that neither of these circumstances exists because article VIII, section 11 of the West Virginia Constitution expressly directs that municipal courts created by the Legislature[9] "shall have jurisdiction to enforce municipal ordinances" and that West Virginia Code § 8–12–5(26) unequivocally authorizes municipalities "[t]o regulate or prohibit the keeping of animals or fowls and to

---

**6.** West Virginia Code § 19–20–20 (2007) provides that

[e]xcept as provided in section twenty-one of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. Upon satisfactory proof before a circuit court or magistrate that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

**7.** In this regard, I note that Chapter 19 is entitled "Agriculture," whereas Chapter 8 is entitled "Municipal Corporations."

**8.** In its analysis, the circuit court relied upon West Virginia Code § 8–12–5 (2012 & Supp. 2014), which grants municipalities the power and authority to enact ordinances, which do not conflict with other laws, as follows:

In addition to the powers and authority granted by: (i) The Constitution of this State; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, *and to the extent not inconsistent or in conflict with any of the foregoing* except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case

may require, and by appropriate action based thereon.

*Id.* (emphasis added). The circuit court also relied upon West Virginia Code § 8–1–2(9) (2012), which provides that,

"[i]nconsistent or in conflict with" shall mean that a charter or ordinance provision is repugnant to the Constitution of this State or to general law because such provision (i) permits or authorizes that which the Constitution or general law forbids or prohibits, or (ii) forbids or prohibits that which the Constitution or general law permits or authorizes[.]

**9.** The Legislature authorized municipalities to create municipal courts through its enactment of West Virginia Code § 8–10–2(a) (2012), which states in pertinent part, as follows:

Notwithstanding any charter provision to the contrary, any city may provide by charter provision and any municipality may provide by ordinance for the creation and maintenance of a municipal court, for the appointment or election of an officer to be known as municipal court judge ... and authorize the exercise by the court or judge of the jurisdiction and judicial powers, authority and duties set forth in section one of this article and similar or related judicial powers, authority and duties enumerated in any applicable charter provisions, as set forth in the charter or ordinance.

provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large." The circuit court further reasoned that because Bluefield City Ordinance § 4–49, West Virginia Code § 8–12–5(26), and West Virginia Code § 19–20–20 [10] all provide for the regulation and destruction of vicious animals, there is "no conflict in substance or purpose."

The discussion above indisputably demonstrates the authority of a municipality to establish a municipal court charged with enforcing the municipality's ordinances, which may provide for the impoundment and/or destruction of vicious and dangerous animals. Accordingly, I now turn to the majority's ill-advised and legally unsound conclusion that West Virginia Code § 19–20–20 [11] somehow nullifies the long-standing constitutional and statutory authority of municipalities to address the humane destruction of vicious dogs through their ordinances enforced by their own courts within their own communities. The Legislature, having already addressed the issue of the destruction of animals in the context of municipalities, had no reason to include municipal courts in West Virginia Code § 19–20–20. Significantly, "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 415 (1995) (citation omitted). Here, the majority finds that the grant of authority to municipalities to enact ordinances that provide for the destruction of "animals and fowl," as found in West Virginia Code § 8–12–5(26), is trumped by West Virginia § 19–20–20 because the latter addresses "dogs" specifically rather than "animals" generally. Such reasoning is flawed. The Legislature undoubtedly employed the term "animals" to fulfill its intent of giving municipalities very broad authority to enact ordinances addressed to any manner of animals that might be found within a municipality, whether they be pot bellied pigs, cats, ferrets, or dogs. *See Black's Law Dictionary*

106 (10th ed.2014) (defining "animal" as "[a]ny living creature (besides plants) other than a human being."). Obviously, dogs fall well within the definition of "animal."

As such, it is clear that the Legislature intended to provide municipalities, as well as counties, with the ability to control dangerous and vicious animals, including dogs, within their purview. Rules of statutory construction do not require municipalities to yield to counties in this regard as each has a role in protecting the safety and well-being of the citizenry from dangerous and vicious animals.

Moreover, "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments." Syl. Pt. 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). Although West Virginia Code § 8–12–5 was first enacted in 1868, the Legislature did not overlook or forget this statute when it enacted West Virginia Code § 19–20–20 in 1981. In fact, West Virginia Code § 8–12–5 was last amended this year—2014. And, the Legislature clearly recalled the statutory authority that it gave to municipalities in the area of animal control when it expressly provided in West Virginia Code § 19–20–6a (2007) that county commissions may contract with or reimburse a municipality for the "care, maintenance, control, or destruction of dogs and cats[,]" and when it gave counties and municipalities the permission to contract with one another in relation to the maintenance of a county dog pound and to jointly employ a dog warden in West Virginia Code § 19–20–8a (2007). Simply stated, had the Legislature intended to provide magistrates and circuit courts with *exclusive* jurisdiction to order the destruction of dangerous and vicious dogs, it could have done so by expressly stating that "sole and exclusive jurisdiction for the destruction of vicious dogs is vested in circuit courts and magistrates, notwithstanding any other statute to the contrary." However, the Legislature did not provide for such exclusivity, and "[c]ourts are

10. In addition to this statute that allows for counties to address vicious dogs, I observe that West Virginia Code § 19–20–8(a) provides for the humane destruction of *any* unlicensed dog that has been impounded if not claimed by its owner

within five days, regardless of whether it is vicious.

11. *See supra* note 6.

not free to read into the language what is not there, but rather should apply the statute as written." *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994).

I am deeply concerned the majority's opinion will serve as a spring board for further diminishment of the authority and duty of municipal courts to enforce municipal ordinances. While the majority acknowledges the statutory authority of municipalities to enact ordinances, it cavalierly disallows the enforcement of such ordinances in municipal courts simply because a statute allows for counties to seek the destruction of vicious dogs in either magistrate or circuit court. Will the confusion created by the majority effectively sanction future and potentially fatal attacks by vicious dogs upon unsuspecting children as they walk to school within a city's limits? Will an elderly couple be mauled by a vicious dog in their front yard as they rake leaves? Likewise, will the majority's ruling be relied upon in the future to strip municipal courts of their power to enforce other ordinances, such as those involving assault and battery and hate crimes, merely because there are statutes that also authorize the prosecution of such matters in either magistrate or circuit court?

1. Ms. Robinson entered a plea of guilty in the Municipal Court of Bluefield to owning, keeping, and/or harboring a dangerous animal in violation of Bluefield Municipal Ordinance § 4–49. As part of this plea, she admitted that the dog was vicious.

2. W. Va. Const. art. VIII, § 11 concerning municipal courts.

3. W. Va.Code § 8–12–5 (2012 & Supp.2014) (establishing the general powers of every municipality).

4. Bluefield Municipal Ordinance § 4–49 (discussed *infra* the text); *see also* Clarksburg Municipal Ordinance § 507.18(i)("The City Manager or his/her designee may order the destruction of a dog that it determines to be extremely dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual, or a dog declared dangerous whose owner is unable or unwilling to adequately restrain it."); Dunbar Municipal Ordinance § 507.99 ("[A]ny vicious dog which attacks a human being or another domestic animal may be ordered destroyed when in the Court's judgment, such vicious dog represents a continuing threat of serious harm to human beings or domestic animals."); Huntington Municipal Ordinance

For these reasons, I find that the circuit court appropriately upheld the authority of the City of Bluefield's municipal court to enforce Bluefield City Ordinance § 4–49 in this matter. And, based upon my concerns expressed herein, I respectfully dissent from the majority's decision in this case.

WORKMAN, Justice, dissenting:

(Filed Oct. 31, 2014)

The majority's opinion is not only wrongly decided, but it is patently obvious that it is result-oriented. In their misguided quixotic chivalry towards dogs, the three members of this Court constituting the majority have not only perverted the law, but have forgotten that human beings also have value; and when an animal is vicious, people need protection from them. This dog's owner acknowledged he was vicious.[1] He attacked the City of Bluefield's Animal Control Officer Randall Thompson, causing him to be hospitalized for four and one-half days, to undergo serious surgery, and to suffer severe injuries to his hands. In order to spare the life of the vicious dog, the majority ignores the West Virginia Constitution,[2] a statute[3] and many municipal ordinances[4] throughout this

§ 507.08 ("If the Municipal Court shall find, as a result of the hearing upon a complaint, that a dog is vicious or dangerous, as provided under this section, the owner or guardian of such dog shall be fined not more than five hundred dollars ($500.00) or imprisoned not more than thirty days or both. In addition, the Municipal Court may, as a result of said finding that a dog is vicious or dangerous, order such dog be destroyed."); Martinsburg Ordinance § 505.15 ("Any dog finally determined to be vicious or dangerous shall be disposed of by the Animal Control Office in the same manner as such office disposes of other dogs, except that vicious or dangerous dogs may not be made available to the public.... If, in the discretion of the Chief Animal Control Officer, or his or her designee, a dog cannot safely be captured and detained, pursuant to subsection (b) above, and the same has been determined to be vicious or dangerous, the Animal Control Office is authorized to take immediate and, if necessary, lethal action, against such dog notwithstanding the fact that no written notice has been communicated to the owner of the dog and that no hearing into said determination has been requested or held."); Morgantown Municipal Ordinance § 507.11 ("The City Manager or his designee may order the destruction of a dog that it determines to be extremely

State; and obliterates a fair, safe procedure for small towns to deal with a danger to their residents.

This unnecessary unraveling of a municipal court's jurisdiction to enforce municipal ordinances impacts many more cities and many more ordinances than just a single ordinance in Bluefield. As set forth in note four *supra*, the same or similar ordinances enacted by many cities in this State, including Huntington, Morgantown, and Wheeling, to name a few, are now invalid. Additionally, the impact of this decision reaches much farther than just vicious dog ordinances. Any ordinance that provides for enforcement by a municipal court is at risk of being declared invalid if there is a statute that provides for enforcement in magistrate or circuit court. For instance, the entirety of Article III of the Charleston Municipal Code, §§ 10–111 to –163 contains numerous ordinances pertaining to dangerous dogs, cruelty to animals, restrictions on the number of dogs, licensing of dogs and impoundment of dogs, are enforced through the municipal court. *See* Charleston Municipal Code § 10–1(e) (providing that "[v]iolaters of any section of this chapter may be summoned to the municipal court by a humane officer or police officer."). Yet, because there exists similar provisions on similar topics within the provisions of West Virginia Code §§ 19–20–1 to –25 and because West Virginia Code § 19–20–19 provides that "[m]agistrates shall have concurrent jurisdiction with the circuit courts to enforce penalties by this article[,]" all the City of Charleston's ordinances concerning animals are potentially invalid. *See also, e.g.,* Bluefield Municipal Code §§ 4–39 to 4–64; Dunbar Municipal Code §§ 505.01 to 505.99 and 507.01 to 507.99; Parkersburg Municipal Code §§ 505.01 to 505.99.

The majority opinion holds in the syllabus point two that

[b]efore the destruction of a dog may be ordered under the authority of W. Va.Code § 19–20–20[1981], satisfactory proof that the dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals" must be presented before a circuit court or a magistrate.

This holding is derived from the majority's flawed reasoning that the provisions of Bluefield's municipal ordinance conflict with the provisions of West Virginia Code § 19–20–20.

To that end, the majority very selectively focuses upon a single principle of statutory construction which establishes that "[w]hen a provision of a municipal ordinance *is inconsistent or in conflict with* a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. Pt. 1, *Vector Co. v. Bd. of Zoning Appeals,* 155 W.Va. 362, 184 S.E.2d 301 (1971) (emphasis added). In so focusing upon this particular principle of statutory construction, the majority makes a giant leap that the Bluefield ordinance conflicts with West Virginia Code § 19–20–20. The majority, however, fails to mention that the Legislature specifically defined the phrase "[i]nconsistent or in conflict with" in West Virginia Code § 8–1–2(9)(2012) to mean "a charter or ordinance provision is repugnant to the Constitution of this State or to general law because such provision (i) permits or authorizes that which the Constitution or general law forbids or prohibits, or (ii) forbids or prohibits that which the Constitution or general law permits or authorizes."

So, the question becomes what language contained within the Bluefield Municipal Ordinance § 4–49 is so "repugnant to the Constitution of this State or to the general law" that it either authorizes that which "the Constitution or general law forbids or prohibits," or "forbids or prohibits that which the [C]on-

---

dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual, or a dog declared dangerous whose owner is unable or unwilling to adequately restrain it."); Parkersburg Municipal Ordinance § 505.17 ("Vicious or dangerous animals or animals suffering with rabies are hereby declared to be public nuisances and a menace to the public safety and may be summarily destroyed if found running at large."); Wheeling Municipal Ordi-

nance § 508.11 ("The City Manager or his designee, the Ohio County Animal Control Officer, Animal Warden or Law Enforcement Officer, may order the destruction of a dog that it determines to be extremely dangerous to public health or safety, a dog that has made an extremely vicious attack upon an individual, or a dog declared dangerous or vicious whose owner is unable or unwilling to adequately restrain it.").

stitution or general law permits[?]" W. Va. Code § 8–1–2(9). Bluefield Municipal Ordinance § 4–49 provides as follows:

> No person shall own, keep or harbor any dangerous animal known by him to be vicious, dangerous or in the habit of biting or attacking persons, whether or not such dog wears a tag or muzzle, and upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, municipal judge may order any police officer or the animal control officer to cause such animal to be killed. Vicious or dangerous animals are declared to be a public nuisance and a menace to the public safety.

The majority finds that the ordinance conflicts with the provisions of West Virginia Code § 19–20–20 which provides as follows:

> Except as provided in section twenty-one [§ 19–20–21][5] of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. Upon satisfactory proof before a circuit court or magistrate that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

(Footnote added). Under the majority's analysis, because the language of the ordinance, which provides that "upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, *municipal judge* may order any police officer or the animal control officer to cause such animal to be killed[,]" is different from the statute, which provides that "[u]pon satisfactory proof *before a circuit court or magistrate* that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed[,]" there necessarily is a conflict.

The ordinance authorizing a municipal court to make this decision is simply not repugnant either to the West Virginia Constitution or the general law set forth in West Virginia Code § 19–20–20. The ordinance neither authorizes that which the West Virginia Constitution or general law prohibits, nor does it forbid that which the Constitution or general law permits. *See* W. Va.Code § 8–1–2(9). To the contrary, article VIII, § 11 of the West Virginia Constitution expressly gives the municipal courts in this State the jurisdiction to enforce municipal ordinances as follows:

> The Legislature may provide for the establishment in incorporated cities, towns or villages of municipal, police or mayors' courts, and may also provide the manner of selection of the judges of such courts. *Such courts shall have jurisdiction to enforce municipal ordinances,* with the right of appeal as prescribed by law.

(Emphasis added).

Moreover, municipal courts are similar to magistrate courts. For instance, municipal courts like magistrate courts are not courts of record, but only record proceedings in very limited instances.[6] Further, decisions from both courts are appealable to the circuit court.[7] It therefore is unclear how allowing

---

5. West Virginia Code § 19–20–21 (2007) provides for a person to keep "a dog which is generally considered to be vicious, for the purpose of protection," if the person acquires "a special license" from the county assessor and "properly secure[s] such dog in such a manner so as to prevent injury to a person who lawfully passes through or enters upon the property of the keeper or owner."

6. *See* Syl. Pt. 6, *Martin v. W. Va. Div. Labor Contractor Licensing Bd.,* 199 W.Va. 613, 486 S.E.2d 782 (1997) ("Magistrate is not a court of record as contemplated by W. Va.Code § 21–11–14(h) (1991)."); *see also* W. Va.Code § 8–10–2 (requiring municipal courts to comply with Mag-

istrate Court Rule 17 and record proceedings where limit jury trial in misdemeanor case in which jail time may be imposed); W. Va.Code § 50–5–8 (2008) (requiring "[t]rials before a magistrate when jury is empaneled shall be recorded electronically."); W. Va. R.Crim. P. for Magistrate Courts 5.1 (requiring criminal preliminary examinations to be electronically recorded).

7. *See* W. Va.Code § 8–34–1 (2012) (concerning appeals of municipal court cases to circuit court); W. Va.Code § 50–5–12 (establishing appeals from magistrate court to circuit court in civil cases) and § 50–5–13 (establishing appeals

a municipal court to enforce an ordinance that is virtually identical to the statute causes the ordinance to be repugnant either to the Constitution or the statute.

The majority also tosses out the idea that the ordinance must fail because of the general rule of statutory construction which provides that "a specific statute be given precedence over a general statute relating to the same subject matter." Syl. Pt. 1, in part, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). Interestingly, a significant part of the foregoing syllabus point was omitted in the majority opinion. The syllabus point in its entirety is as follows: "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter *where the two cannot be reconciled." Id.* (emphasis added). The phrase "where the two cannot be reconciled" is pivotal in this case because the majority deliberately chooses to ignore that the provisions of West Virginia Code § 8–12–5(26), which gives a municipality the authority to enact an ordinance providing for the destruction of dogs, are easily reconciled with the provisions of West Virginia Code § 19–20–20, which also concerns the destruction of dogs. That the statutes are reconcilable is supported by additional general rules of statutory construction, which unequivocally call any court to strive to resolve the interpretation of statutes in such a way so as to give them the effect intended by the Legislature.

Consequently, it is necessary to present a more complete picture of how this Court should have undertaken its examination of the statutes in this case. In construing a statute or an ordinance, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Moreover, this Court must apply statutes so that no legislative enactment is meaningless, and to read them to harmonize with legislative intent. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." *Id.* at 109, 219 S.E.2d at 362, Syl. Pt. 3. In other words, statutes must be read in pari materia to ensure that legislative intent is being effected. Thus, we have held:

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975); *see also*, Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect."). Significantly, embodied in our fundamental rules of statutory construction is the basic tenant that

> [a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, it its terms are consistent therewith.

Syl. Pt. 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).[8]

---

from magistrate court to circuit court in criminal cases).

**8.** *See State ex rel. Smith v. Maynard*, 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994) (citing *Cannon*

*v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *accord* Syl. Pt. 1, *Stamper by Stamper v. Kanawha Cnty. Bd. of Educ.*, 191 W.Va. 297, 445 S.E.2d 238 (1994) (" ' "The Legislature, when it enacts legis-

Under a more complete examination using all the applicable principles of statutory construction, it is evident that the majority's analysis of the two statutes at issue in this case is short shrift. First, the majority buries the constitutional grant of authority given to municipal courts to enforce municipal ordinances in a footnote, *see* note 2 of majority opinion, in an attempt to hide its importance.

Further, the Legislature enacted Chapter 8 of the West Virginia Code to create and govern Municipal Corporations. Within Chapter 8, West Virginia Code § 8–12–5 enumerates the "General Powers" of every municipality. In particular, West Virginia Code § 8–12–5(26) provides:

In addition to the powers and authority granted by: (i) The Constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon:

. . . .

(26) *To regulate or prohibit the keeping of animals or fowls and to provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large[.]*

(Emphasis supplied). The Constitution, which gives municipal courts the jurisdiction to enforce municipal ordinances and West Virginia Code § 8–12–5, which was revised by the Legislature in 1969 to give municipalities express and specific authority to enact ordinances that provide for the "destruction of animals," both were in existence before the Legislature enacted West Virginia Code § 19–20–20 in 1981.

When the Constitution, West Virginia Code § 8–12–5(26) and West Virginia Code § 19–20–20 are read in pari materia, as should have been done by the majority to

give effect to the legislative intent in this case, it is exceedingly evident why the Legislature found it necessary to enact West Virginia Code § 19–20–20. Prior to § 19–20–20, the Legislature had given counties certain authority under West Virginia Code § 19–20–6. For instance, a "county commission of each county" had the authority to "employ a county dog warden ... to enforce the provisions of this code with respect to control and registration of dogs, the impounding, care and destruction of unlicensed dogs[,]" but not where the dog was licensed or registered. *Id.* There were also provisions for counties to use concerning how dogs were to be dealt with when they attacked livestock. *See* W. Va.Code §§ 19–20–14 to –18. Until the Legislature enacted West Virginia Code § 19–20–20, however, there was no mechanism in areas *outside* of municipalities for dealing with vicious dogs, whether licensed or not. The Legislature consequently enacted West Virginia Code § 19–20–20 to address how to handle vicious dogs *outside* of municipalities. The Legislature's placement of the statute in the chapter of the code dealing with agriculture is further evidence that it was never intended to impact the municipalities' grant of authority.

Thus, when the statutes are read in pari materia one is lead to the undeniable conclusion the circuit court in the instant case correctly found that

[i]f not for § 19–20–20, circuit courts and magistrate courts would lack authority to regulate and destroy vicious animals, because Chapter 8 applies only to municipal corporations. In other words, there was no need for the Legislature to reiterate in § 19–20–20 a municipality's authority to regulate and destroy vicious animals because Chapter 8 already did so. The Legislature did, however, need to empower circuit courts and magistrate courts to do the same.

Rather than seeking to read the West Virginia Constitution, the pertinent statutes and ordinances in a manner that harmonizes,

lation, is presumed to know its prior enactments." Syllabus Point 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).' Syllabus Point 5, *Pullano v. City of Bluefield*, 176 W.Va.

198, 342 S.E.2d 164 (1986)."). *Charleston Gazette v. Smithers*, 232 W.Va. 449, 467–68, 752 S.E.2d 603, 621–22 (2013).

the majority took the path of rendering the Constitution, West Virginia Code § 8–12–5(26) and Bluefield Ordinance 4–49 meaningless. As this Court has long held, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938). Yet, an absurdity is exactly what has transpired in this case.

To remedy the wrong that has been created by the majority, I strongly encourage the Legislature to correct the Court's usurping of municipalities' constitutional and legislative grant of authority by clarifying that municipal and state courts have concurrent jurisdiction in this arena. The statute at issue can be easily revised to make it painfully clear that it was not intended to take a municipal court's authority away.

We all love dogs. I love and remember my dogs, Skippy, Jordy, Toby, Lucky, and Godzilla, like they were my family. And certainly vicious dogs are usually the result of mistreatment by a human. By way of analogy, the root of adult criminal activity often has its origin in severe child abuse. I will fight long and hard to protect abused children and to make our system more effective in intervening in their lives before they grow up and potentially become violent themselves. But once they have become violent, society at large must be protected. Similarly, once a dog has become vicious, human beings (and especially children) must be protected from death or injury from dog attacks. Even the American Society for the Prevention of Cruelty to Animals ("the ASPCA"), the nation's leading animal welfare organization, recognizes that euthanasia may be appropriate where an animal has attacked a person.[9]

In their quest to show how much they love dogs, the majority has issued a ridiculous opinion. Next, I suppose they will require that animals charged with being vicious are

entitled to a court-appointed attorney and a jury trial.

Based upon the foregoing, I respectfully dissent.

---

**9.** To be precise, the ASPCA's position statement on dangerous dog laws provides that "[e]uthanasia' or permanent confinement of the dog are extreme remedies and should be utilized only when the dog has attacked a person·or domesticated animal without justification and has caused serious physical injury or death...." *Position Statement on Dangerous Dog Law*, ASPCA, http://www.aspca.org (last visited October 31, 2014).